IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ESMERALDA MORENO,

       Plaintiff,

       v.                         24-cv-01053 DHU-KK

FRANK J. BISGNANO[1], Commissioner
of the Social Security Administration,

       Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[2]**

Before the Court is Plaintiff Esmeralda Moreno's ("Claimant") Motion for Judgment on the Pleadings (Doc. 15) ("Motion"), filed February 25, 2025, in which Claimant appeals the denial of her claim for Disability Insurance Benefits and asks the Court to remand this matter to the Social Security Administration for further proceedings.[3] (Doc. 15-3.) On April 15, 2025, the Commissioner filed a response to Claimant's Motion. (Doc. 20.) On April 29, 2025, Claimant filed a reply in support of her Motion. (Doc. 21.) Having meticulously reviewed the entire record and the relevant law, being otherwise sufficiently advised, and for the reasons set forth below, I propose to find that Claimant's Motion is well-taken. I therefore recommend that the Court GRANT the

---

[1] Frank J. Bisgnano was confirmed as the Commissioner of the Social Security Administration on May 6, 2025, and is automatically substituted as a party under 42 U.S.C. § 405(g) and Federal Rule of Civil Procedure 25(d)

[2] By an Order of Reference (Doc. 16) entered on March 4, 2025, United States District Judge David H. Urias referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

[3] Claimant initially also applied for Supplemental Security Income, but her claim was denied because she exceeded the income threshold due to her disability benefits through the Veteran's Administration. Claimant did not appeal that denial. (AR 151.)

Motion, reverse the Commissioner's decision denying benefits, and REMAND this matter to the Commissioner for further proceedings.

## I.    FACTUAL AND PROCEDURAL HISTORY

Claimant, aged 42, is a United States Army Veteran who served between 2007 and 2011. (AR[4] 54-55, 120, 312-313.) She took a break in service in 2011 and entered the Army Reserve that same year serving until 2015. (AR 54-55, 312-313.) During her time in the Army and Army Reserve, Claimant worked as a human resource specialist. (AR 54-55, 312-313.) After an honorable discharge, Claimant worked for X Corp Solutions, Inc. as a security driver at Kirtland Air Force Base during 2016 and 2017. (AR 55, 313.) Claimant also worked as a server prior to 2007. (AR 55, 311-312.)

Claimant has been diagnosed with PTSD and major depressive disorder. (AR 120, 519, 571, 647-48, 661, 713, 775, 790.) She also has a history of alcohol abuse. (AR 667.) In addition to psychological impairments, Claimant has been diagnosed with and/or treated for several physical impairments including lumbar spasms, a chronic pain disorder, irritable bowel disorder ("IBS"), lower back pain, right shoulder pain, right wrist pain, and left ankle pain. (AR 348, 535, 567, 625, 691-692, 711-712, 718, 726, 740, 853, 899.)

On March 14, 2022, Claimant filed a claim for disability insurance benefits, alleging disability beginning on December 1, 2017, due to post-traumatic stress disorder ("PTSD"),

---

[4] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on December 12, 2024. (Doc. 12.) The Administrative Record contains Claimant's medical records from December 31, 2016, through March 19, 2024, (AR at Ex. B1F-B3F, B6F-B11F). Generally, these records include yearly physical examinations and other screenings. In addition, in 2023 and 2024, Claimant sought treatment for her psychological impairments. The Administrative Record also contains two consultative examination reports, completed during Claimant's previous application for disability benefits, and a 2018 VA Disability Rating Verification. (AR at Ex. B19D, B4F-B5F.) Finally, the Administrative Record contains Claimant's disability report, adult function report, and work history report, submitted in support of her application. (AR at Ex. B15E-B17E.)

memory loss, right shoulder pain, irritable bowel syndrome ("IBS"), degenerative disk disease, left ankle pain, anxiety, and sleep problems. (AR 17, 120.) Her claim was denied at the initial level on June 9, 2022, and at the reconsideration level on March 28, 2023. (AR 17, 119-128, 129-138.) Claimant requested a hearing, which Administrative Law Judge ("ALJ") Michelle Lindsay held on March 20, 2024. (AR 17, 46-77.) Prior to the hearing, Claimant amended her alleged onset date to July 14, 2020. (AR 42, 328.)

On May 16, 2024, the ALJ issued a decision finding that Claimant is not disabled under the relevant sections of the Social Security Act. (AR 14-34.) On August 22, 2024, the Appeals Council denied Claimant's request for review, which made the ALJ's decision the final decision of the Commissioner. (AR 1-4); *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Claimant now asks the Court to reverse the ALJ's decision and remand this matter to the Commissioner for further proceedings. (Docs. 1, 15.)

## II.   THE ALJ'S DECISION

The ALJ reviewed Claimant's claim pursuant to the five-step sequential evaluation process.[5] (AR 18-19.) First, the ALJ found that Claimant had not engaged in substantial gainful

---

[5] The five-step sequential evaluation process requires the ALJ to determine whether:

    (1) the claimant engaged in substantial gainful activity during the alleged period of disability;
    (2) the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
    (3) any such impairment meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
    (4) the claimant can return to his or her past relevant work; and, if not,
    (5) the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis, and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the

activity since her amended onset date of July 14, 2020, through March 31, 2021, the date Claimant last met the earning requirements to be eligible for disability benefits (i.e., "the date last insured"). (AR 20, 345-47.) The ALJ found at step two that Claimant suffers from the severe impairments of PTSD, depressive disorder, lumbar spasm, and chronic pain disorder. (AR 20.) The ALJ further found that Claimant's alcohol abuse and IBS were not severe, noting that there was "no evidence whatsoever of diarrhea" and that alleged fibromyalgia[6], left ankle pain, and right shoulder issues were not medically determinable. (AR 20-21.)

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the criteria of listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21-22.) In reaching this finding, the ALJ found "moderate" limitations in "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." (AR 21-22.) The ALJ thus found that Claimant's mental impairments did not meet the criteria of Paragraph B of listings 12.04, 12.06, and 12.15 of Appendix 1 because, individually or collectively, they did not cause at least two "marked" limitations or one "extreme" limitation, but only four "moderate" limitations. (AR 21-22.) The ALJ also found that Claimant's mental impairments did not meet the criteria of "paragraph C" of listings 12.04, 12.06, and 12.15 of Appendix 1 because the medical records did not "show medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of Claimant's

---

process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

[6] There is some evidence in the record that supports a finding that Claimant had fibromyalgia, but it is from a medical examination after the date last insured. After a December 2023 appointment, a rheumatologist concluded Claimant had experienced "chronic pain syndrome/myalgia" in her lower back and that her history was "strongly suggestive of syndrome such as fibromyalgia." (AR 1029.) The rheumatologist noted that Claimant had been prescribed another pain medication, gabapentin, in October 2023. (AR 1028.) The rheumatologist recommended consideration of "complex pain clinic referral." (AR 1021.)

[mental impairments]" and "show[ed] no marginal adjustment, that is, Claimant [did] not have minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life." (AR 22.)

At step four, in determining Claimant's residual functional capacity ("RFC"),[7] the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and although "Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (AR 23.) The ALJ also found that "[C]laimant's statements about the intensity, persistence, and limiting effects of his or her symptoms . . . are inconsistent because the record does not support them." (*Id*.) The ALJ did not further explain which portions of Claimant's testimony regarding her symptoms she found to be consistent or inconsistent with the medical evidence or the reasons why the record did not support Claimant's statements. (AR 23-24.) Rather, the ALJ summarized the objective medical evidence and medical opinion evidence. (AR 23-26.)

The ALJ found Claimant to have the RFC:

to perform medium work as defined in 20 [C.F.R. §] 404.1567(c) except she is able to understand, remember, and carry out simple instructions and make commensurate simple work-related decisions. She is able to maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task. She requires work that does not involve interaction with the general public. She can have occasional interactions with coworkers and supervisors. She requires work involving no more than occasional change in the routine work setting and no more than occasional independent goal setting or planning. She requires work that does not involve the use of public transportation as part of the job.

---

[7] A person's residual functional capacity is "the most [the person] can still do" despite physical and/or mental limitations caused by the person's impairment(s). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(AR 22-23.)

The ALJ found that Claimant could not perform her past relevant work ("PRW") as a security driver, server, or human resources representative and that she was limited "to simple unskilled work and limited interpersonal interaction." (AR 26.) At step five, the ALJ found that Claimant could perform the work of a cleaner, mail clerk, or inspector, as defined by the *Dictionary of Occupational Titles* ("DOT"), and thus concluded she was not disabled. (AR 27.)

### III.   STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include

"anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

## IV.   DISCUSSION

In her motion, Claimant argues that the ALJ did not properly consider her subjective symptom testimony in determining her RFC. (Doc 15-3 at 10-14.) First, Claimant asserts that the ALJ did not summarize "testimony regarding the intensity, persistence, and limiting effects of her symptoms," and instead merely listed the impairments reported by Claimant in her application (Doc. 15-3 at 10.) Claimant also asserts that even though the ALJ found that her impairments "could reasonably be expected to cause the alleged symptoms," the ALJ's conclusion that "the [Claimant's] statements [regarding her symptoms] were not entirely consistent with the medical evidence" did not clearly articulate the reasons the ALJ relied upon to reach her conclusion. (Doc. 15-3 at 10.) Claimant argues that the ALJ did not apply the correct legal standard because the ALJ did not evaluate "all evidence when determining whether subjective complaints are consistent with the record. (Doc. 15-3 at 11.) Claimant further argues that the ALJ's RFC determination failed to consider the non-medical evidence. (Doc. 15-3 at 11.)

7

The Commissioner counters that the ALJ demonstrated that she considered Claimant's subjective symptom evidence because the ALJ "discussed the objective medical evidence, [Claimant's] course of treatment, and [Claimant's] admitted abilities," which, the Commissioner argues, constitute a credibility determination that rejects Claimant's subjective symptom evidence. (Doc. 20 at 5-6.) The Commissioner asserts that the ALJ (1) detailed "normal findings on examination" that undercut Claimant's symptom testimony; (2) highlighted the ways in which Claimant's admitted abilities contradicted her claims of disabling symptoms; and (3) explained that Claimant's treatment history undermined her complaints. (Doc. 20 at 5-7.)

Following a careful review of the record, I find that the ALJ's evaluation of Claimant's subjective symptom evidence regarding her impairments was erroneous in two respects. First, the ALJ did not clearly articulate the reason she discounted Claimant's subjective symptom evidence because she did not affirmatively link credibility determinations to substantial evidence, neither summarizing the subjective symptom evidence nor offering more than boilerplate statements to support her reason for rejecting it. Second, the ALJ's analysis of the objective medical evidence and medical opinion evidence omits substantially probative evidence or inaccurately describes the evidence. These errors are not harmless because the ALJ's RFC determination rests upon an incomplete and inaccurate account of the objective medical evidence and Claimant's subjective symptom evidence.

## A.      Legal Standards Governing Evaluation of Subjective Symptom Evidence

In determining whether a claimant is disabled, an ALJ must consider all of Claimant's reported symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 416.929(a); *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). An ALJ must consider evidence other than

8

objective medical data, such as a claimant's reported symptoms. *Luna*, 834 F.2d at165. *Luna* sets

out a three-part test to evaluate subjective symptom testimony that mirrors the two-part test set

forth by the Agency and in the regulation. *Luna*, 834 F.2d at 163-64; SSR 16-3P 2016 WL 1119029,

at \*2 (Marc 16, 2016), 20 C.F.R. §§ 419.929(b)-(c)(1). Under the *Luna* framework at steps one

and two, an ALJ first determines whether the claimant established a pain-producing impairment

by objective medical evidence and then whether there is a "loose nexus" between the proven

impairment(s) and the subjective symptom testimony. *Luna*, 834 F.2d at 163-64 (breaking the first

part of the Agency and regulation test into two parts); *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th

Cir. 2010) (approving *Luna* standard); SSR 16-3P 2016 WL 1119029, at \*2; 20 C.F.R. §

416.929(b). Next, *Luna* requires an ALJ to consider all of the objective and subjective evidence to

evaluate the intensity and persistence of the symptoms to determine the extent to which they limit

Claimant's ability to work. *Luna*, 834 F.2d at 163; SSR 16-3P 2016 WL 1119029, at \*2; 20 C.F.R.

§ 416.929(c)(1). The Agency has set forth factors for the ALJ to consider in evaluating the

intensity, persistence, and liming effect of a claimant's symptoms. SSR 16-3P 2016 WL 1119029,

at \*9.

The Court ordinarily defers to the ALJ, as the trier of fact, on the issue of a claimant's

credibility. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Casias v. Sec'y of Health*

*& Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). Nevertheless, "[i]n evaluating an individual's

symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the

individual's statements about his or her symptoms have been considered' or that 'the statements

about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3P, 2017 WL

5180304, at \*10 (S.S.A. Oct. 25, 2017). Rather, the ALJ's evaluation of subjective symptom

evidence "must contain specific reasons for the weight given to the individual's symptoms, be

9

consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017); *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (ALJ's evaluation of claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings").

In reviewing a claim of disability, a claimant "'is entitled to have [her] nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence.'" *Kepler*, 68 F.3d at 390 (quoting *Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir.1988)). Although the ALJ need not discuss each piece of evidence or every part of a claimant's testimony, the ALJ's opinion must make clear that a claimant's testimony was considered. *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006). Boilerplate statements regarding the consistency of statements concerning the intensity, persistence and limiting effects of the claimant's symptoms with the medical evidence do not fulfill the ALJ's obligation to clearly articulate the reasons for an ALJ's credibility findings; the ALJ must connect those reasons to substantial evidence. *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *Knight o/b/o J.K. v. Astrue*, No. 11-CV-0817, 2013 WL 12333604, at *5 (D.N.M. Jan. 11, 2013); *see also Kepler*, 68 F.3d at 391 (stating that a credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings").

**B.    The ALJ Did Not Clearly Articulate the Basis for Rejecting Claimant's Subjective Symptom Evidence**

In supporting the determination of Claimant's RFC, the ALJ first offers a boilerplate statement that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (AR 23.) The ALJ next states

that she must first "determine[] whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms" and then "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." (AR 23.) After setting forth the legal standard, the ALJ acknowledged that Claimant had medically determinable impairments that could produce the alleged symptoms and then immediately found:

> the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or (sic) her symptoms, they are inconsistent because the record does not support them.

(AR 23.)

As noted by Claimant, the ALJ does not describe (and had not previously described) Claimant's subjective symptom evidence or clearly articulate the basis for her finding that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence" or that "the record does not support them." (AR 23-26.) Instead, the ALJ summarizes and analyzes only the objective medical evidence and opinion evidence from previous State agency consultants, often omitting significantly probative evidence or misstating the evidence. (AR 23-26.)

The ALJ's failure to summarize Claimant's subjective symptom evidence suggests that she did not consider it in determining Claimant's RFC, and her failure to closely and affirmatively link her credibility determination to substantial evidence renders it a conclusion in the guise of findings. *Kepler*, 68 F.3d at 391. Claimant's testimony and statements in her 2022 AFR suggest a more restrictive RFC than determined by the ALJ in several respects. First, the ALJ found that Claimant

11

could have limited interaction with coworkers while the symptoms of her PTSD and depression show that Claimant struggled to be in public or around other people entirely. Second, the ALJ incorporated few limitations in the RFC related to Claimant's sleep abnormality, and in particular, the impact upon her ability to persist, concentrate, and remember. Finally, Claimant's subjective symptom testimony of her physical impairments, most specifically her IBS and her chronic pain also suggest more restrictive limitations than found by the ALJ on her ability to work in public and to persist in her work.

First, Claimant testified that her PTSD caused anxiety and hypervigilance that limited her ability to be in public and thus undermine the ALJ's determination that Claimant could have limited interaction with coworkers. The ALJ found that Claimant's RFC meant that she "requires work that does not involve interaction with the general public [but that] [s]he can have occasional interactions with coworkers and supervisors." (AR 22.) However, Claimant's subjective symptom evidence, described in this section, suggests that Claimant's impairment may limit her to interact with coworkers or be in public spaces, whether or not she interacted with members of the public. The ALJ did not describe or provide reasons why she did not find credible Claimant's statements about the limiting effects of her PTSD particularly in her ability to be in public at all. (AR 58-60, 451-455.)

Claimant testified that she felt that she was being "followed around." (AR 59) Claimant explained that "if [she's] walking, [she] feels somebody's behind me and there's nobody [there]." (AR 59.) Claimant testified that even when she goes to the mailbox, ten meters away from her home, she believes she is being followed. (AR 59.) Claimant testified that she feels she is being followed "no matter where [she goes]." (AR 60.) She stated that she was "always on guard." (AR 58.) Claimant also testified that she "hear[d] voices," explaining that she "hear[s] voices in [her]

12

head … [and] it really is not a good feeling." (AR 57-58.) She explained that she hears multiple voices, both male and female. (AR 58.) Claimant explained further that although she cannot identify what the voices are saying, she believes "they're trying to tell me something." (AR 58.) She described hearing the voices "unexpectedly" and "almost all the time." (AR 58.) Finally, Claimant also testified that when she awakes during the night she checks to ensure that her windows are secure. (AR 58-60.)

Similarly, in her May 9, 2022, AFR ("2022 AFR"), Claimant stated that her depression made it "hard to function from day to day." (AR 451.) Claimant also reported that she does not leave her home because she experiences panic attacks or anxiety. (AR 455.) Claimant stated in the 2022 AFR that she shops only online or by mail and that she leaves the house only when accompanied by a family member or friend. (AR 454-455.) She also testified that she limits activity outside her home, and "hardly ever" goes out, other than to medical appointments at the VA. (AR 60.) She explained that she "hardly ever" goes to the grocery store because of the number of people present. (AR 60.) She also testified that she "hardly ever" goes out for meals with her wife. (AR 60.) Other than stating at Step 3 that Claimant testified "it is very hard for her to be in public," (AR 21), the ALJ failed to acknowledge Claimant's other testimony and statements supporting a more restrictive RFC than one that determines she may have limited interaction with coworkers or may work in jobs where she may come into contact with members of the public even if she need not engage with them.

Further, the Court cannot follow the ALJs reasoning where on the one hand she credited Claimant's testimony to determine that she cannot interact with the public yet discounted the symptoms demonstrating she cannot interact with the public. In sum, because I cannot determine that the ALJ considered both the objective medical evidence and subjective symptom evidence to

determine Claimant's RFC or made a credibility determination that is closely and affirmatively linked to substantial evidence, I recommend this case be remanded for further proceedings on this basis. *Blea*, 466 F.3d at 915; *Kepler*, 68 F.3d at 391.

Second, Claimant also provided subjective symptom evidence regarding her sleep abnormality, nightmares, and fatigue, and how those symptoms impacted her ability to understand, remember, carry out instructions, maintain attention and concentration, and persist on tasks. Claimant reported that her PTSD impaired her ability to sleep, which caused fatigue and thus impaired her ability to focus, concentrate, and remember. (AR 58-60, 451-459.) Claimant described difficulty sleeping, testifying that she gets four hours of sleep "at the most" and is "constantly waking up[,] looking out the window." (AR 60.) Further, she stated that because of her PTSD, she "can't remember things or people" and "[has] difficulty concentrating on things." (AR 61.) Claimant also testified that she lost her job at X Corp Solutions in 2017 because she was "always late" because she could not get up due to the medications she took for her medical conditions. (AR 56.) Similarly, in her 2022 AFR, Claimant reported difficulty sleeping, noting that she wakes several times a night to ensure windows and doors are secure. (AR 452.) In her 2022 AFR, Claimant stated that she had "memory loss," found it difficult to complete tasks, and found that she could pay attention for at most a couple minutes. (AR 456.) While the ALJ acknowledged the objective medical evidence showing that Claimant's treating professionals regularly noted sleep abnormality the ALJ does not clearly articulate the basis for her conclusion that the symptoms Claimant reported and their impact on her are inconsistent with that evidence. (AR 24.) Accordingly, the ALJ's opinion did not make clear that she considered these symptoms. In the absence of a clearly articulated credibility determination, the Court is unable to follow the ALJs reasoning in discrediting Claimant's testimony. *Blea*, 466 F.3d at 915; *Kepler*, 68 F.3d at 391.

14

Finally, Claimant provided testimony and information about the limiting impact of her IBS and pain, which also undermines the ALJ's RFC because the symptoms Claimant reported would limit both her ability to be in public spaces and her ability to do "medium work." (AR 22, 58-64, 451-459.) Claimant testified that her IBS also makes it difficult to leave her home, because she must be vigilant in locating available bathrooms. (AR 63.) Claimant reported that her physical impairments also make it difficult for her to leave her residence or accomplish day-to-day tasks, noting that she was using a cane to stand up, was able to walk only short distances at a time (*e.g.*, to the mailbox), or wash only a few dishes at a time. (AR 63-64.) Claimant testified that these symptoms were frequent and persistent and further that neither medicine nor treatment had been effective in alleviating them. (AR 58-64.) In the 2022 AFR, Claimant reported that she could do only light chores, but that the chores sometimes took her a "full day or two" because of her pain and that she often needed assistance to complete housework because of her pain and depression. (AR 453.) She reported cooking only frozen dinners (AR 452.) She also reported in the 2022 AFR that she could walk for only 5 to 10 minutes before needing to rest for 20 minutes, had trouble lifting more than 10 pounds, and also had trouble reaching. (AR 456.) Although the ALJ described the objective medical evidence, it is not clear that she considered the testimony Claimant provided about symptoms related to her physical impairments or made a clearly articulated credibility determination regarding the subjective symptom evidence related to Claimants physical impairments. *Blea*, 466 F.3d at 915; *Kepler*, 68 F.3d at 391.

A claimant "'is entitled to have [her] nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence.'" *Kepler*, 68 F.3d at 390 (quoting *Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir.1988)); *see also Blea*, 466 F.3d at 915 (ALJ opinion must make clear that ALJ considered a claimant's testimony); *Briggs*, 248 F.3d at

15

1239 (boilerplate credibility statements are not sufficient). In this case, the ALJ's opinion does not make clear that the ALJ *actually* considered Claimant's reports of her symptoms, beyond the cursory statement that she had done so. *Huston v. Bowen*, 838 F.2d 1125, 1130 (10th Cir. 1988) (finding error when any analysis of claimant's testimony regarding symptoms during the alleged period of disability, which undercut the RFC finding, was "glaringly missing" from opinion); *Dawn R. v. Kijakazi*, No. 22-CV-478, 2023 WL 5176274, at *6 (D.N.M. Aug. 11, 2023). At best, the ALJ offers a brief summary of Claimant's 2022 RFC and does not reference Claimant's testimony at all. (AR 21-26.) Rather than discuss the subjective symptom evidence, the ALJ lists only the bases under which Claimant sought DIB and identifies the impairments for which she found objective medical evidence. (AR 21-26.) She does not summarize or reference the symptoms reported by Claimant during the administrative hearing or in the adult function reports. (AR 23-26.)[8] The ALJ next summarizes the medical evidence, including medical opinion evidence without referencing Claimant's alleged symptoms to show why that evidence is or is not consistent with Claimant's statements regarding her symptoms. Although the ALJ concludes that "the record does not support" Claimant's testimony regarding the "intensity, persistence, and limiting effects" of her symptoms, she offers no explanation for this finding. (AR 23-26.) Because the ALJ did not discuss Claimant's subjective symptom evidence or clearly articulate her reason for rejecting Claimant's testimony, the Court cannot assess how the ALJ evaluated those symptoms, and this is also a basis for remand. *See Brownrigg*, 688 F. App'x at 546.

**C.  The ALJ's Discussion of the Objective Medical Evidence is Incomplete and Inaccurate**

---

[8] The ALJ does not discuss the 2022 AFR when determining Claimant's RFC. Rather, the ALJ describes it earlier in the opinion, at Step 3 when determining mental impairments did not meet the criteria of Paragraph B of listings 12.04, 12.06, and 12.15 of Appendix 1. (AR 22 *citing* AR 451-459.)

Although an ALJ is not required to discuss every piece of evidence, an ALJ must discuss uncontroverted evidence she chooses not to rely on or significantly probative evidence that she chooses to reject. *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009). In addition, an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). In this case, the ALJ both overlooked significantly probative evidence and selected only the evidence that was favorable to a finding of nondisability. The record contains considerable significantly probative evidence, which is consistent with Claimant's subjective symptom evidence and which the ALJ either overlooks, selectively chooses from, mischaracterizes, or misstates. Thus, even if the ALJ's analysis of the medical evidence constituted a credibility determination regarding Claimant's subjective symptom evidence as the Commissioner argues, it is not supported by substantial evidence.

First, in describing the medical evidence regarding Claimant's PTSD, the ALJ states that sometimes Claimant reported depression or anxiety to her providers and sometimes she did not. (AR 23.) The ALJ devotes only two sentences to the medical evidence regarding the medical evidence documenting Claimant's symptoms of depression and anxiety and cites to several pages of the record. (AR 23.) In addition, the ALJ's sparse analysis both mischaracterizes the records in which Claimant did not report depression or anxiety and omits significantly probative evidence from the records in which Claimant did report depression or anxiety. In short, the ALJ's summary of the medical evidence regarding her depression and anxiety is both incomplete and inaccurate. *See Hubert A. M. v. Saul*, No. 20-CV-00297-SH, 2021 WL 2568044, at *5 (N.D. Okla. June 23, 2021) (finding ALJ determination not supported by substantial evidence where ALJ mischaracterized evidence and ignored evidence that supported Claimant's testimony).

The ALJ's short explanation of the medical evidence strips it from its context. For example, the ALJ cited 5 appointments[9] at which Claimant reported, presumably on an intake form, that she was not suffering from depression or anxiety. (AR 548, 623, 726, 741, 749, 783.) However, three of these appointments were for breast examinations, cervical examinations, pap smears, or exams related to Claimant's colon health; at the other two appointments with a primary care provider, Claimant sought treatment for her back pain and follow up after side-effects to the Co-Vid 19 vaccine. (AR 548, 623, 726, 741, 749 783.) At these appointments, Claimant was not being treated for anxiety or depression and the ALJ's characterization of those appointments as indicative of the absence of such symptoms is at best misleading. The objective medical evidence, which the ALJ either glosses over or overlooks, provides significantly probative evidence to demonstrate Claimant's primary care providers and mental health providers acknowledged and treated symptoms of Claimant's PTSD, including depression and anxiety consistent with Claimant's testimony described in Section IV.B., *supra*.

The ALJ fails to discuss significantly probative evidence from Claimant's July 1, 2019, examinations with her primary health care provider and a mental health care provider. (AR 24, 661-670.) Although the ALJ references these examinations, she states only that Claimant reported "depression, anxiety, poor appetite, poor sleep, fatigue, and difficulty with concentration." (AR 24.) The medical evidence shows more than Claimant reporting symptoms to a provider. Rather, at the July 2019 physical examination with her primary care provider, Claimant reported "feeling down" for the past month, having both depression and anxiety, and that her partner of four years "wants out of the relationship. (AR 667.) More, Claimant's provider observed that Claimant also

---

[9] The ALJ cited six different portions of the record. However, two of the citations pointed to the same appointment. (AR 24, 548, 623.)

appeared to self-medicate to manage her depression and anxiety, reporting that she had consumed alcohol excessively ("10 drinks at a time") on four occasions in the two weeks prior to the appointment. (AR 667.)[10] Claimant's doctor was sufficiently concerned about Claimant's anxiety and depression that she provided a "warm handoff" to a mental health provider.[11] (AR 669).

Treatment records indicate further that Claimant reported multiple anxiety-related symptoms, including "worrying about different things, [having] difficulty relaxing, restlessness, irritability, and [being] afraid of something bad happening," all of which are consistent with her testimony at the hearing. (AR 663.) Claimant also reported that she had never felt that anxious before and recently had a panic attack. (AR 663.) Claimant reported experiencing nightmares, avoidance, feeling on guard, and numbness. (AR 663.) The mental health provider noted her mood as dysthymic. (AR 663.) The mental health provider also noted that although Claimant did not have an imminent suicide risk, her overall risk was "moderate" and that she had previously had suicidal ideation several years earlier. (AR 663.)[12] Finally, the mental health provider administered the Patient Health Questionnaire-9 and Generalized Anxiety Disorder-7 questionnaires, which resulted in ratings of both severe depression and severe anxiety. (AR 663.) Claimant was prescribed escitalopram, for the first time, to treat her PTSD symptoms and declined

---

[10] This evidence directly supports Claimant's testimony that because of her PTSD, she had been "drinking way too much" and that her symptoms impacted her marriage, as her wife had discussed getting a divorce because of her drinking and a previous citation for driving under the influence. (AR 60-61.)

[11] This was at least the second time Claimant's primary care provider believed her mental state to be sufficiently impaired to warrant referral to a mental health provider. In May 2017, Claimant's provider observed that she appeared anxious and had "poor eye contact" and referred her to a mental health professional. (AR 630-632.)

[12] This evidence directly supports Claimant's testimony that she had previously had suicidal thoughts because of her PTSD. (AR 61-62.)

psychotherapy, opting to attempt treatment through medication. (AR 664, 669.)[13] The ALJ's opinion provides none of this context, suggesting only that Claimant reported depression and anxiety to her providers.

Second, the ALJ offers a similarly cursory characterization of the medical evidence regarding how Claimant's PTSD impacted her sleep and the corresponding effect of her sleep abnormality. (AR 24.) The ALJ's opinion states, generally and without description, that Claimant reported poor sleep, nightmares, and waking up at night. (AR 24.) But the record contains a more complex pattern of sleep and fatigue related issues. In a May 30, 2018, physical examination, for example, Claimant reported headaches, difficulty sleeping, and fatigue. (AR 548.) During the above-referenced July 2019 physical examination, Claimant reported difficulty sleeping (including both falling and staying asleep), and a resulting lack of motivation "to do things." (AR 667, 669.) At the July 2019 exam, Claimant's doctor prescribed mirtazapine to aid Claimant's sleep pattern. (AR 669.) Similarly, the mental health provider that also saw Claimant in July 2019 found that she was experiencing "poor sleep, fatigue, poor appetite, feeling bad about herself, difficulty concentrating, and moving slowly." (AR 662.)

The impact of the ALJ's omission of any discussion of the July 2019 appointments is compounded by the ALJ's partial reliance on the State agency's psychiatric consultant, who reviewed Claimant's medical records and offered an opinion in May 2019 *before* these and future examinations showing Claimant's PTSD symptoms had exacerbated in July 2019. (AR 25, 644-649.) The psychological consultant concluded with the following impression of Claimant's PTSD:

> For the most part, [Claimant] appears capable of functioning independently and tending to her daily needs and responsibilities without substantial difficulty. She

---

[13] PTSD or other mental impairments may themselves prevent a claimant from seeking treatment lack of treatment. *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010); *Freidenberger v. Colvin*, No. 14-CV-2337, 2015 WL 3395770, at *5 (D. Colo. May 26, 2015) (collecting cases).

> described having a well-balanced lifestyle with limited life stress combined with a supportive family and social relationships, which are positive prognostic signs.

(AR 648.) Several of the State agency's psychiatric consultant's opinions are directly contradicted by subsequent medical evidence – such as having a supportive family and tending to her daily needs. (AR 667 (noting Claimant's possible divorce), 783 (medical record indicating Claimant sought assistance with groceries), AR 661-670 (July 2019 exams noting Claimant's severe anxiety and depression, in ability to do things, poor appetite, and difficulty concentrating).)

More, the record contains additional significantly probative evidence consistent with Claimant's subjective symptom evidence that the ALJ does not reference at all. For example, in January 2019, Claimant sought and received from her primary care provider an excuse from potential jury duty because attending a jury duty would cause her excessive anxiety, which is consistent with Claimant's testimony that her PTSD limits her ability to participate in public activity. (AR 527.) In addition, on November 17, 2020, approximately 16 months after the July 2019 appointments and during Claimant's period of alleged disability, Claimant reported to her primary care provider that the symptoms, including depression, flashbacks, and nightmares, she reported previously persisted and were not intermittent. (AR 775-780.) At the November 2020 physical examination, Claimant again reported difficulty sleeping, telling her doctor that she had experienced ongoing fatigue, dating back to May 2019, and said that, because of her difficulty sleeping, she "runs out of energy" about 3 hours after waking up. (AR 778.) Her doctor noted Claimant's fatigue "could be related to insomnia associated with her **depression**" and considered ordering a sleep study if her symptoms persisted. (AR 780 (emphasis in original).) The ALJ's opinion engages with none of this ongoing two-year pattern and treatment for Claimant's PTSD symptoms, including anxiety, depression, and sleep abnormality.

Other evidence that the ALJ glosses over is Claimant's disability rating from the Veteran's Administration. *See Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered). Although the ALJ mentioned Claimant's disability rating from the Veteran's Administration, she does not discuss it in depth or describe its findings, particularly those that are consistent with Claimant's testimony and statements in her AFR. (AR 24, 348-361.) On October 29, 2018, the VA adjusted its disability rating for Claimant, determining that effective May 7, 2018, Claimant was 100% disabled because of her PTSD. That rating did not later change. (AR 348-361, 593, 648.) Although there were no medical records attached to the VA's finding, in the summary of its finding, the VA identified several symptoms from Claimant's medical records that it relied upon. (AR 348.) Claimant's symptoms that the VA identified included "forgetting names," "occupational and social impairment, with deficiencies in most areas," "suicidal ideation," "depressed mood," "near continuous depression," "flattened affect," "mild memory loss," "chronic sleep impairment," "difficulty adapting to a work-like setting," "suspiciousness," "persistent delusions," "near continuous panic," "obsessional rituals," "persistent hallucinations," "anxiety," "difficulty in establishing and maintaining effective work and social relationships," "impairment of short and long term memory," and "difficulty adapting to stressful circumstances." (AR 349-350.) These symptoms are consistent with Claimant's testimony and the medical evidence from Claimant's July 2019 and November 2020 examinations.

Finally, the ALJ also relied on medical evidence supportive of the Agency decision from a period more than one year after the date last insured while ignoring medical evidence from the same period that undermined the decision. (AR 24.) Medical evidence from after the date last insured may be pertinent evidence in that it may disclose the severity and continuity of

impairments prior to the date last insured. *Baca*, 5 F.3d at 479. Nevertheless, the ALJ may not rely upon only that evidence favorable to the Agency decision. *Haga*, 482 F.3d at 1208. Here, the ALJ referenced examinations in November and December 2022, stating the November 2022 mental exam was "unremarkable" and that Claimant denied depression, anxiety, or suicidal ideation at the December 2022 exam. (AR 24.) The ALJ also stated "some of the most recent exams have been unremarkable," citing to a January 2024 gynecological exam to infer Claimant's mental state. (AR 24, 965.) The ALJ's reliance on two late 2022 examinations and misleading characterization of a gynecological examination as evidence of Claimant's mental state are contradicted by substantial medical evidence in the record. Between April 2023 and February 2024, Claimant attended 8 psychological outpatient appointments to treat her PTSD. (AR 951-955, 958-961, 1015-1020, 1049-1052, 1072-1077, 1080-1085, 1118-1122, and 1132-1139.)

At these visits, contrary to the ALJ's conclusion that Claimant's mental status after the date last insured was "unremarkable," Claimant repeatedly reported exacerbated PTSD symptoms, including symptoms such as fatigue, difficulty concentrating, anxiety, flashbacks, hearing voices, and hypervigilance, consistent with her subjective symptom testimony. (AR 958-961, 1015-1020, 1049-1052, 1072-1077, 1080-1085, 1118-1112, 1132-1139.) For example, in April 2023, Claimant reported being hypervigilant, checking doors repeatedly to make sure she is safe, isolating herself, having flashbacks, hearing voices and having panic attacks. (AR 1133-1134.) Claimant also reported in April 2023 that she got a full night's sleep only one to two times per week and that she was fatigued. (AR 1133.) The provider noted a "significant increase in anxiety, depression and insomnia for the past 10 months." (AR 1133.) In May 2023, Claimant reported continued low mood, fatigue, and low motivation. (AR 1119.) She also reported hearing a male voice in her head and being unable to identify what it said and seeing "shadows" out of the corner of her eye. (AR

1119.) In September 2023, Claimant reported chronic intrusive memories, related avoidance, nightmares, and day-long anxiety. (AR 1081.) In October 2023, Claimant reported that she feels "on guard all the time," waking up throughout the night, nightmares two to three times per week, and waking up to check the windows. (AR 1072-73.) In November and December 2023, Claimant reported that her "mood was going downhill" and that it was "not too good." (AR 1016, 1049.) She also described having flashbacks and engaging in hypervigilance (*e.g.*, checking the windows frequently), noting that she was "always on guard." (AR 1016, 1049.) In January 2024, Claimant reported significant anxiety, trouble sleeping, and difficulty concentrating. (AR 959.) Notably, Claimant's mental health professionals prescribed additional medication, including prazosin, sertraline, trazodone, or increased the dosage of medication for Claimant to address her symptoms. (AR 948-949, 1072, 1120.) Although these appointments occurred after the date last insured, they provide medical evidence that shows ongoing PTSD symptoms, consistent with Claimant's testimony, that persisted between July 2019, one year before the date of onset, through the March 2021 date last insured, and continuing through February 2024, just before the hearing. *Anderson v. Apfel*, 100 F. Supp. 2d 1278, 1289 (D. Kan. 2000) (finding an erroneous credibility determination where ALJ did not consider whether a claimant's condition worsened over time). Rather than cite to this evidence, the ALJ cherry-picked from the evidence, relying on three appointments, one of which was a gynecological exam, and ignoring eight appointments where Claimant received treatment directly related to her PTSD, to infer that Claimant's PTSD symptoms had abated after the date last insured. *Haga*, 482 F.3d at 1208 (an ALJ may not cherry pick from the evidence and rely only on that favorable to a finding of nondisability).

In sum, there is ample significantly probative evidence that demonstrate that Claimant's PTSD caused symptoms that were consistent with her subjective symptom testimony and

statements. *See Johnson v. Berryhill*, No. CIV-16-222-SPS, 2017 WL 4233280, at *4 (E.D. Okla. Sept. 25, 2017) (finding ALJ's decision was not supported by substantial evidence where there was "considerable evidence and testimony regarding the claimant's social anxiety and problems being around others, yet the ALJ took pains to minimize or even ignore much of it.") The ALJ ignores or glosses over much of that evidence and thus it is not clear from the ALJ's opinion that the ALJ considered this evidence in determining Claimant's statements about the symptoms of her PTSD were not supported by the record. *Kepler*, 68 F.3d at 390 (holding that ALJ must consider all the evidence). In addition, the ALJ's opinion selects, and often mischaracterizes, only the evidence that is consistent with her credibility determination. *Haga*, 482 F.3d at 1208.

The ALJ's analysis of Claimant's physical impairments is similarly sparse, and, like the ALJ's analysis of Claimant's psychological impairments, it overlooks or mistakenly describes the evidence in the record. (AR 23-24.) The ALJ initially notes that a series of examinations in May 2018, in which Claimant claimed her back pain produced bilateral leg numbness, revealed a "normal" lumbar spine. (AR 23, 545, 558-559.) The ALJ does not discuss that Claimant also reported that climbing stairs worsened her pain and that her walking was limited due to the pain, that Claimant had been self-treating the pain with Icy Hot, or that the treating physician noted tenderness in Claimant's lower back and prescribed 800 milligrams of ibuprofen three times per day, instead relying primarily on the imagery to discount Claimant's alleged back pain. (AR 548-549.) The ALJ then discusses a November 2020 examination in which she again reported back pain and that her primary care provider prescribed a lidocaine ointment, a muscle relaxant, and continued ibuprofen. (AR 24, 778-780.) Finally, the ALJ also did not discuss the VA finding that adjusted Claimant's disability rate regarding her degenerative disc disease from 10 to 20 percent or that she experienced pain in her wrist, shoulder, and back. (AR 348, 350-351, 354.)

25

Elsewhere, the ALJ states that Claimant "has a diagnosis of IBS with constipation; however, there is no evidence that she has the frequent bowel accidents to which he testified. There is no evidence whatsoever of diarrhea." (AR 20.) This statement is plainly incorrect. *See Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) (ALJ's conclusion was not supported by substantial evidence where it was belied by a letter in the record); *Stills v. Astrue*, 476 F. App'x 159, 161 (10th Cir. 2012) (agency's reasoning was not supported by substantial evidence where it was "incorrect"). For example, May 2017 treatment notes indicate that Claimant had "loose stools [associated with her] IBS," which caused her to use the bathroom ten times per day. (AR 627-628.) She reported that psyllium powder helped to reduce the symptoms of her IBS but noted also that she did not like the taste of it. (AR 627-628.) In addition, the VA set Claimant's disability rating for her at 30 percent disabling, the VA's maximum disabling rating for IBS. (AR 349.) The VA's rating described abdominal distress and diarrhea as symptoms of Claimant's IBS. (AR 353.) Finally, the medical evidence in 2023 through 2024 shows that on three occasions Claimant reported increased symptoms, including diarrhea and vomiting, associated with her IBS. (AR 952, 1073, 1081.)

Finally, the ALJ incorrectly states that the objective medical evidence showed that Claimant's medications were effective in managing her symptoms. At one visit, Claimant indicated that many of the medications were not effective, made her anxiety worse, or made her feel like "a zombie." (AR 1073-74.) She also reported that symptoms related to IBS were exacerbated by SSRIs. (AR 1073.) Claimant also testified that medication she had been prescribed for her PTSD and anxiety "completely shuts [her] down," such that she feels like a "zombie." (AR 62.) Although she goes to the VA for medical appointments, she is not sure that "it's helping me" and that she believes she is being followed when she does. (AR 60.) I note further that further that, over time

26

generally, Claimant's treating professionals increased prescribed medications to treat the symptoms of both her psychological and physical impairments, which implied that Claimant's medication was not effective in treating her symptoms. (*See generally* AR 23-24, 699, 779, 948-49, 1072, 1120.)

In sum, the ALJ's finding regarding Claimant's RFC is not supported by substantial evidence because, as described in this section, the ALJ ignores significantly probative evidence, mischaracterizes evidence on which she relies, or is factually inaccurate. *Wall*, 561 F.3d at 1067; *Haga*, 482 F.3d at1208; *Stills v. Astrue*, 476 F. App'x at 161.

**D. The ALJ's Errors are Not Harmless**

The ALJ's errors and omissions in evaluating Claimant's subjective symptom evidence regarding her impairments are not harmless. The Tenth Circuit "appl[ies] harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Nevertheless,

> harmless error analysis … may be appropriate to supply a missing dispositive finding where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.[14]

*Id.* at 733-34 (quotation marks and ellipsis omitted).

Here, the ALJ did not evaluate Claimant's subjective symptom evidence about her psychological and physical impairments when she concluded that Claimant has the RFC to perform work as defined in 20 C.F.R. § 404.1567(c), to understand, remember, and carry out simple instructions, to maintain attention and concentration to perform and persist at simple tasks at a

---

[14] However, courts "cannot attempt to supply a missing finding for the ALJ on legal or evidentiary matters that [she] did not consider because it risks violating the general rule against post hoc justification of administrative action." *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006) (quotation marks omitted).

consistent pace for two hours at a time with some limitations, such as work that does not involve interaction with the general public and work that has only occasional interactions with coworkers and supervisors. (AR 22.) Claimant's subjective symptom evidence significantly undercuts the RFC because it suggests that Claimant is more limited in her ability to work in a public setting, focus, persist and concentrate due to her fatigue, and engage in medium work because of her physical limitations. Further, as noted in Section IV.C, *supra*, the ALJ ignores significantly probative evidence that is consistent with Claimant's subjective symptom evidence, cherry picks from the evidence to discuss only the medical evidence that supports a finding of nondisability and not the evidence that is consistent with Claimant's subjective symptom evidence, and mischaracterizes the evidence she relies upon to make the RFC determination.

Had the ALJ properly evaluated the evidence, including the Claimant's subjective symptom evidence and the objective medical evidence, she may have assessed a mental RFC with more restrictive social limitations, particularly as to how Claimant may tolerate being in public, or one accounting for limitations in Claimant's ability to concentrate, remember, follow instructions, and stay on task due to chronic fatigue caused by her sleep abnormalities. Similarly, a proper evaluation of the evidence may result in a more restrictive physical RFC, where Claimant's impairments show both chronic pain and impact from her IBS. More restrictive social and physical limitations, in turn, may have reduced or eliminated the other work the ALJ found Claimant could perform. *See Diaz v. King*, No. 23-CV-1061, 2025 WL 369505, at *10 (D.N.M. Feb. 3, 2025), *report and recommendation adopted sub nom. Diaz v. Dudek*, No. 23-CV-1061, 2025 WL 590422 (D.N.M. Feb. 24, 2025) (finding that had AL considered claimant's subjective symptom testimony regarding impairments that impacted his ability to be in public a  more restrictive RFC may have been

28

warranted). For these reasons, the ALJ's errors and omissions in evaluating Claimant's subjective symptom evidence regarding her impairments were not harmless and require remand.

## V.    CONCLUSION

In sum, the ALJ failed to properly evaluate Claimant's subjective symptom evidence, including failing to summarize that evidence. Further, the ALJ failed to evaluate whether, and to what extent, Claimant's subjective symptom evidence regarding her impairments was consistent with the medical evidence. Finally, the ALJ made clear factual errors. These errors and omissions undermine the ALJ's assessment of Claimant's RFC and preclude a finding that substantial evidence supports the assessment. Accordingly, I recommend that the Court GRANT the request for reversal and remand in Claimant's Memorandum of Law (Doc. 15-3), REVERSE the Commissioner's decision denying Claimant's disability claim, and REMAND this matter to the Commissioner for further proceedings in accordance with these Proposed Findings and Recommended Disposition.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**